26cr27 NEB/JFD

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) **INDICTMENT** |
| | ) |
| v. | ) 18 U.S.C. § 286 |
| | ) 18 U.S.C. § 287 |
| CAESAR MUNIR WILSON, | ) 18 U.S.C. § 1957 |
| | ) 18 U.S.C. § 1344 |
| Defendant. | ) |

THE UNITED STATES GRAND JURY CHARGES THAT:

### INTRODUCTION

1. From 2022 to 2023, Defendant CAESAR MUNIR WILSON filed and conspired to file false tax returns with the IRS requesting hundreds of millions of dollars in undeserved tax refunds. His own tax returns falsely requested refunds of more than $90 million. He conspired with and assisted Nathan Lloyd Staples in filing false returns requesting additional tax refunds totaling more than $210 million. WILSON also attempted to defraud three financial institutions out of more than $50 million.

2. WILSON's fraudulent claims totaled to more than $350 million and resulted in the Treasury paying out more than $19 million in undeserved tax refunds.

3. Wilson used his fraud proceeds to buy a $2.6 million house in Prior Lake, to make investments in cryptocurrency and other projects, and for personal expenditures.

### BACKGROUND

4. At all times relevant to the indictment:

    a. CAESAR MUNIR WILSON was a resident of Minnesota. Wilson never reported more than $100,000 in employment income on his federal taxes.

SCANNED
JAN 29 2026
U.S. DISTRICT COURT MPLS

  b. The Caesar Wilson Company was a business incorporated in Minesota by WILSON with a principal place of business in Minnesota. WILSON was the company's owner and CEO. The company had no legitimate business.

  c. The Caesar Munir Wilson Trust claimed to be a trust under Minnesota law. It was controlled by WILSON. WILSON also controlled related trusts and estates, such as the Caesar Munir Wilson Estate.

  d. Sovereign citizens are individuals who incorrectly believe that at some point in the late 19th or 20th centuries, the U.S. government created a split persona for each American citizen—a private or "sovereign" side, on one hand, and a "public side" also known as a "straw man," on the other hand. Sovereign citizens wrongly believe that certain laws, such as the federal income tax, do not apply to a person's sovereign persona. Some sovereign citizens falsely believe the government monetizes Americans' birth certificates to fund and maintain a secret trust account.

  e. The Department of the Treasury is the national treasury and finance department for the U.S. government. Agencies within the Treasury include the Internal Revenue Service ("IRS"), which collects federal taxes, and the Bureau of the Fiscal Service, which provides accounting and payment services to the federal government, including with respect to the collection and payment of federal taxes. The Treasury does not a maintain a secret trust account funded through Americans' birth certificates.

  f. Bank 1 is a New York bank that manages more than $90 billion in assets.

g. The Federal Reserve Bank of St. Louis, based in St. Louis, Missouri, and is one of 12 regional reserve banks that are part of the Federal Reserve System. The Federal Reserve is an instrument of the U.S. government. It manages U.S. monetary policy and supervises and regulates U.S. banks.

h. Bank 2 is a Minnesota bank that manages more than $670 billion in assets.

**Wilson's History of Fraudulent Tax Filings**

5. Up until and including the 2017 tax year, WILSON's tax returns requested nothing more than modest tax refunds.

6. In WILSON's 2018 tax return, his false claims grew. WILSON falsely claimed he and his wife were each a "business," falsely labeled their social security numbers as employer identification numbers ("EINs"), and falsely listed their "business" addresses as 75 Martin Luther King Jr. Boulevard in St. Paul, which is the address for the Minnesota State Capitol. WILSON falsely asserted his income should be reduced by a net operating loss of $222,517, even though WILSON had not suffered such a loss. In total, the return requested a refund of $29,341 that was not in fact owed to him. The Treasury paid him $18,388.

7. For the 2019 tax year, he did not initially file a tax return. Then in January 2021, WILSON filed 14 amended tax returns, for every tax year between 2006 and 2019. The only figures on the returns were requested tax refund amounts, which : $11.4 million for 2019, $11.18 million for 2018, $5.59 million for 2017, and so on. In total, the amended returns requested $73 million in claimed tax refunds. In fact, WILSON was not owed that

amount. WILSON attached a document to these returns titled "Revocation of Election Established by the US Congress." The document falsely claimed that "American Nationals" possess a special legal "option" to not pay federal income tax. WILSON stamped his returns with a logo for "The Wilson Estate."

8.  WILSON's assertions in the amended returns were false. WILSON was not entitled to millions of dollars in tax refunds. IRS did not pay the requested refunds.

9.  For his 2020 return, WILSON and his wife did not file a return as a married couple, as in years past. Instead, WILSON used IRS Form 1041 "for Estates and Trusts" to file a return for the Caesar Munir Wilson Estate. The return falsely claimed an income of $12,501,317, including $11 million in gambling winnings. It also falsely claimed more than $24 million deductions, including a roughly $500,000 farming loss, even though WILSON was not a farmer, and an $11.5 million deduction for "BAD DEBT EXPENSE." WILSON requested a refund of $899,935. Of that amount, the Treasury paid WILSON $649,935. Bank records show WILSON used the funds to buy cryptocurrency and pay personal expenses.

10. Around the same time that WILSON submitted his 2020 return, he submitted an IRS form for taxpayers to submit supporting documentation to the IRS. WILSON instead used the form to submit two more returns for the previous tax year, 2019: (*i*) a Form 1040 in the Wilsons' names, fraudulently requesting a $109,910 refund, and (*ii*) a Form 1041 for the Wilson Estate, fraudulently requesting a $1,462,699 refund. The IRS did not pay WILSON these requested refunds.

11.     With the 2021 tax year, WILSON's fraud grew even more severe. He filed another Form 1041 return on behalf of the Caesar Munir Wilson Estate. The return falsely claimed a total income of more than $11 million, offset by tax payments of more than $12 million, for a requested refund of $8,528,827. The IRS granted WILSON's request. It sent him a check for the entirety of his requested amount.



12.     WILSON deposited the check. On or about July 21, 2022, WILSON used approximately $2.6 million of the proceeds from his fraudulent 2021 tax refund to buy a 63.5 acre property with a five-bedroom, five-bath residence in Prior Lake, Minnesota, on Lake Cynthia.



13. WILSON invested another $5.5 million with a Detroit investment manager.

14. IRS took notice of WILSON's fraudulent tax filings and suspicious transactions. On or around August 10, 2022, IRS mailed WILSON a letter telling him it be believed his 14 amended tax returns, filed in January 2021, were frivolous. IRS fined him $5,000 that fall.

**Wilson's March 9, 2023 Fraud on Bank 1**

15. The next spring, in March 2023, WILSON defrauded Bank 1 using a fake check claiming to be from the U.S. Treasury. Around March 9, 2023, Bank 1 received what appeared to be a check for $11.7 million at the bank's Texas lockbox facility. The check had a logo header for "Caesar Munir Wilson Estate" as well as a header for the "Bureau of the Fiscal Service U.S. Department of the Treasury." It claimed to draw on an

account from the Treasury. The back was signed by WILSON and stated the funds should be credited to "Caesar Wilson Company."



*Wilson's fake check*



*The back of the fake check*

16. The bank initially deposited the check and credited WILSON's account for the $11.7 million. Then the bank realized the check's routing and account numbers for

7

the Treasury Department were wrong. The bank removed the money from WILSON's account.

17. Days later, a bank fraud investigator called WILSON. WILSON falsely told the investigator the check had been mailed directly to the bank from the Treasury. WILSON's handwriting was on the back of the check and was the same as his handwriting on his Bank 1 signature card, indicating he signed the check and it had not been mailed directly from the Treasury. The investigator confronted WILSON about the handwriting. He had no explanation.



*The signature on the Bank 1 signature card.*

18. The investigator asked WILSON for a copy of the tax return that caused the Treasury to issue the purported tax refund check. WILSON falsely said he didn't have a copy because a tax preparer had assisted with the return. Later, in February 2025, WILSON told federal law enforcement agents that he prepared his own tax returns and did not use a tax preparer.

19. WILSON created the check himself and acknowledged as much. He later told agents the check was a poor attempt by him at making a "bill of exchange." He said he made a mistake with the check's routing and account numbers.

**Wilson's April 6, 2023 Fraud on the Federal Reserve Bank of St. Louis**

20. A few weeks later, on April 6, 2023, WILSON used his online IRS account to attempt a $20 million electronic payment to the Treasury using a bank account for the

Federal Reserve Bank of St. Louis. WILSON did not have authority to transfer money from the Federal Reserve Bank of St. Louis.

21. WILSON entered a correct bank routing number for the Federal Reserve Bank of St. Louis, but used an incorrect account number. He entered his own social security number, rather than actual St. Louis Fed account number. The payment was unsuccessful.

**Wilson's Assistance with Staples Fraudulent 2021 and 2022 Tax Returns**

22. Around the same time that WISLON was receiving and spending his $8.5 million tax refund, he was also training Staples and others known and unknown to the Grand Jury on how to commit tax fraud, including Nathan Lloyd Staples.

23. WILSON and Staples met in or around January 2022, just after WILSON received his $649,935 fraudulent refund for the 2020 tax year. Staples learned that WILSON had come into money, and WILSON agreed to train Staples on how to do the same.

24. WILSON told Staples that the U.S. government uses birth certificates to finance and fund a secret trust account administered by the government. According to WILSON, anyone could access the secret trust account by submitting a Form 1041 tax return requesting a tax refund on behalf of a person's trust or estate. Wilson told Staples that a person could put any numbers they wanted on their tax return; they were "just numbers."

25. Staples repeatedly asked WILSON for assurance that what WILSON was suggesting was legal. Staples did his own research and noticed a government website

9

stating that WILSON's beliefs were false. Staples told WILSON about the websites. Staples also read websites discussing criminal laws prohibiting frivolous tax returns and texted WILSON, "have you heard of the Rico act 1970?" WILSON falsely reassured Staples that his tax theories were lawful.

26. WILSON helped Staples draft his 2021 individual income tax return. The return requested a $287,947 refund based on false claims of income and tax payments. Staples had never had a household income of more than $200,000. He was not entitled to such a large refund. The IRS did not pay the refund.

27. The next year, WILSON again advised Staples on how to submit a tax return. With WILSON's oversight, including personally editing documents, Staples set up a family trust called the "Nathan Staples Estate" using a template found online. Staples worked with WILSON to obtain a foreign EIN for the trust from the IRS. Staples's trust was not foreign.

28. With WILSON's assistance, Staples drafted his 2022 Form 1041 tax return. Form 1041 is the form for trust and estates. Staples falsely declared business income of $24,178,056—an entirely false amount chosen with WILSON's help. Staples then reverse-engineered his goal tax refund of $9,999,999 by plugging in whatever numbers got him there. The $9,999,999 number was picked because WILSON said any larger of request could not be e-filed.

29. The Treasury paid Staples's refund with a check for $10,121,542 on June 27, 2023. That was the amount Staples requested, plus interest, which was required by statute. Staples deposited the check two days later.

United States v. Caesar Munir Wilson



30. In addition to the 2022 return, WILSON advised Staples he should file amended returns for all previous tax years—like WILSON did in 2021. WILSON warned Staples that otherwise the IRS may be confused as to why Staples hadn't filed the couple's prior returns under a family trust.

31. Staples followed WILSON's advice. He filed a total of 38 amended returns on the IRS's amended-return form, Form 1040-X. These returns falsely requested a total of $202,055,000 in tax refunds. IRS did not pay the requested refunds.

### Wilson and Staples's Tax Fraud Conspiracy

32. In or around January 2022, after WILSON and Staples started working together, they came to an agreement about entering into a partnership. The agreement was that Staples would help recruit clients for WILSON to teach how to use tax returns to access secret government trust accounts. WILSON and Staples also agreed that if Treasury paid Staples's tax refund, Staples would share a portion of the funds with WILSON.

33. Staples understood that WILSON was advising others too. WILSON was traveling a lot and talked about teaching people how to use bills of sale and money orders to access money held in trust by banks.

34. For example, WILSON advised a group of sovereign citizens who had organized themselves into a group called "Sovrans PMA," with PMA standing for private membership association. The group communicated by Telegram and sometimes videoconference. WILSON trained the group on trusts and taxes. He sent the group tax forms and documents for use in tax filings. He showed them how to file tax returns as a trust. He also introduced a speaker who lectured the group on strawman theory. From time to time members of the group made "donations" to WILSON, and WILSON made donations to them.

35. After Staples received his $10,121,542 fraudulent tax refund, he paid $50,000 to the Caesar Wilson Company, pursuant to WILSON and Staples's agreement.

### Wilson's April 20, 2023 Fraudulent Tax Return

36. Two weeks after WILSON's attempted fraudulent transfer from the Federal Reserve Bank of St. Lous, on or about April 20, 2023, WILSON filed a false tax return for the 2022 tax year. He filed another Form 1041 on behalf of the Wilson Trust, claiming a total income of more than $19 million, with a tax prepayment of about the same amount, resulting in a claimed refund of $9,993,350.

| | | | |
|---|---|---|---:|
| **Income** | 1 | Interest income | 8,528,827 |
| | 2a | Total ordinary dividends | 10,528,827 |
| | b | Qualified dividends allocable to: (1) Beneficiaries _____ (2) Estate or trust _____ | |
| | 3 | Business income or (loss). Attach Schedule C (Form 1040) | 16,800 |
| | 4 | Capital gain or (loss). Attach Schedule D (Form 1041) | -3,000 |
| | 5 | Rents, royalties, partnerships, other estates and trusts, etc. Attach Schedule E (Form 1040) | |
| | 6 | Farm income or (loss). Attach Schedule F (Form 1040) | 2,171 |
| | 7 | Ordinary gain or (loss). Attach Form 4797 | |
| | 8 | Other Income. List type and amount | |
| | 9 | **Total income.** Combine lines 1, 2a, and 3 through 8 | 19,073,625 |
| **Deductions** | 10 | Interest. Check if Form 4952 is attached ▶ ☐ | |
| | 11 | Taxes | |
| | 12 | Fiduciary fees. If only a portion is deductible under section 67(e), see instructions | |
| | 13 | Charitable deduction (from Schedule A, line 7) | |
| | 14 | Attorney, accountant, and return preparer fees. If only a portion is deductible under section 67(e), see instructions | |
| | 15a | Other deductions (attach schedule). See instructions for deductions allowable under section 67(e) | |
| | b | Net operating loss deduction. See instructions | |
| | 16 | Add lines 10 through 15b | |
| | 17 | Adjusted total income or (loss). Subtract line 16 from line 9 ... 17  19,073,625 | |
| | 18 | Income distribution deduction (from Schedule B, line 15). Attach Schedules K-1 (Form 1041) | 0 |
| | 19 | Estate tax deduction including certain generation-skipping taxes (attach computation) | |
| | 20 | Qualified business income deduction. Attach Form 8995 or 8995-A | |
| | 21 | Exemption | 100 |
| | 22 | Add lines 18 through 21 | 100 |
| **Tax and Payments** | 23 | Taxable Income. Subtract line 22 from line 17. If a loss, see instructions | 19,073,525 |
| | 24 | Total tax (from Schedule G, Part I, line 9) | 7,779,544 |
| | 25 | 2022 net 965 tax liability paid from Form 965-A, Part II, column (k), line 5 | |
| | 26 | Total payments (from Schedule G, Part II, line 19) | 19,076,625 |
| | 27 | Estimated tax penalty. See instructions | |
| | 28 | Tax due. If line 26 is smaller than the total of lines 24, 25, and 27, enter amount owed | |
| | 29 | Overpayment. If line 26 is larger than the total of lines 24, 25, and 27, enter amount overpaid | 11,297,081 |
| | 30 | Amount on line 29 to be: a Credited to 2023 ▶  1,303,731 ; b Refunded | 9,993,350 |

37. IRS did not pay WILSON's requested refund for the 2022 tax year.

13

### IRS's Investigation of Wilson and Staples

38. In the summer of 2023, IRS began investigating both WILSON's and Staples's fraudulent tax filings.

39. An IRS revenue officer called Staples on August 4, 2023. With Wilson's advice, Staples made frivolous tax arguments and sent in frivolous correspondence, along with a silver coin. The revenue officer returned the coin.

40. The revenue officer reviewed Staples's bank accounts and noticed his $50,000 payment to the Caesar Wilson Company. The revenue officer called WILSON on August 14, 2023. He asked WILSON if he had assisted anyone else in filing a trust tax return. WILSON lied and said no.

### Wilson's November 2023 Fraud on Bank 2

41. About three months later, in November 2023, WILSON used his online IRS account to make three more attempts at transferring the IRS money. Each attempted transfer was for $28 million and was drawn on an account that had been closed for nearly two years. The closed account did not contain any funds for WILSON to transfer.

42. Bank 2 did not allow the transfer, but IRS credited one of the attempted payments to WILSON's IRS account before resolving the issue and freezing Wilson's account.

## COUNT 1
(Filing a False Claim for Refund)

43. Paragraphs 1 through 42 are incorporated herein.

44. On or about April 20, 2023, in the State and District of Minnesota, and elsewhere, the defendant,

**CAESAR MUNIR WILSON**,

made and presented, and caused to be made and presented, to the Internal Revenue Service, an agency of the United States Department of the Treasury, a claim against the United States for payment of a refund of taxes, knowing that claim to be false, fictitious, and fraudulent, by preparing and causing to be prepared, and presenting and causing to be presented to the Internal Revenue Service, Form 1041, on behalf of a trust, the Caesar Wilson Trust, for the calendar year 2022, requesting a refund of $9,993,350 to which WILSON knew neither he nor the Caesar Munir Wilson Estate were entitled, all in violation of Title 18, United States Code, Section 287.

## COUNT 2
(Conspiracy to File a False Claim for Refund)

45. Paragraphs 1 through 44 are incorporated herein.

46. Beginning in or about January 2022 and continuing until in or about August 2023, in the State and District of Minnesota, and elsewhere, the defendant,

**CAESAR MUNIR WILSON**,

and others known and unknown to the grand jury, knowingly, intentionally, and voluntarily agreed, combined, and conspired to defraud the United States by obtaining and aiding to obtain the payment and allowance of false, fictitious, and fraudulent claims for refunds of taxes against the IRS, an agency of the U.S. Department of the Treasury, all in violation of Title 18, United States Code, Section 286.

## COUNT 3
(Section 1957 Money Laundering)

47. Paragraphs 1 through 46 are incorporated herein.

48. On or about June 30, 2023, in the State and District of Minnesota, and elsewhere,

**CAESAR MUNIR WILSON,**

did knowingly engage and attempt to engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the transfer of $50,000 in U.S. currency, such property having been derived from a specified unlawful activity, that is, conspiracy to file a false tax return, all in violation of Title 18, United States Code, Section 1957.

## COUNTS 4–6
(Bank Fraud)

49. Paragraphs 1 through 48 are incorporated herein.

50. On or about the dates set forth below, in the State and District of Minnesota, and elsewhere,

**CAESAR MUNIR WILSON,**

having devised and intended to devise the scheme and artifice to defraud the specified financial institutions and to obtain moneys and funds owned by and under the custody and control of those financial institutions by means of material false and fraudulent pretenses, representations, and promises, well knowing at the time that the pretenses, representations, and promises would be and were false and fraudulent when made, did knowingly execute and attempt to execute the foregoing scheme and artifice, by causing, and attempting to

United States v. Caesar Munir Wilson

cause, the transfer of funds, with each transfer, and attempted transfer, being a separate count of this indictment as described below:

| Count | On or About Date | Description |
|---|---|---|
| 4 | March 9, 2023 | The deposit into Wilson's Bank 1 account of a check falsely claiming to authorize a withdrawal from a U.S. Treasury bank account. |
| 5 | April 6, 2023 | The attempted electronic transfer of $20 million from the Federal Reserve Bank of St. Louis to the IRS. |
| 6 | November 2023 | The attempted electronic transfer of $28 million from a closed Bank 2 account to the IRS. |

All in violation of Title 18, United States Code, Section 1344.

## FORFEITURE ALLEGATIONS

51.   Paragraphs 1 through 50 are incorporated herein.

52.   If convicted of Count 3 of this Indictment, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

53.   If convicted of any of Counts 4 through 6 of this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2) any property, real or personal, which constitutes or is derived from proceeds obtained directly or indirectly as the result of violation of Title 18, United States Code, Section 1344.

54. If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

| UNITED STATES ATTORNEY | FOREPERSON |
|---|---|